# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KANE COUNTY PERSONNEL, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 13 C 8800 |
| FEDERAL INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In 2009, several former employees of Plaintiff Kane County Personnel filed suit against KCP, an Illinois corporation, alleging that their former employer's vacation policy violated the Illinois Wage Payment and Collection Act by requiring that employees work a minimum number of hours before they could qualify for vacation pay. Plaintiff attempted to tender the defense of that litigation to its insurer, Defendant Federal Insurance Company, a New Jersey corporation, but Federal denied coverage, claiming that the suit's allegations were not covered by the insurance policy. KCP later reached a settlement with its former employees, and filed this diversity action on December 10, 2013, seeking to recover the amount it paid to settle the case, plus attorneys' fees and costs incurred in defense of the underlying suit. Defendant moves to dismiss pursuant to Rule 12(b)(6), and for the reasons stated below, the motion [14] is granted.

## BACKGROUND

Plaintiff KCP is a temporary staffing agency organized under the laws of Illinois; its principal place of business is also in this state. (Compl. ¶ 4.) KCP is a franchisee of Manpower, Inc., which also provides temporary staffing services (*id*. ¶ 8), and, as a franchisee, KCP distributed Manpower's employee handbook to its own workers and also adopted that company's employment policies, including the vacation pay policy challenged in the 2009 lawsuit. (*Id*. ¶¶ 9, 11.)

**I.      The 2009 Suit**

In June 2009, former Manpower employees filed a class action suit against Manpower in this court (the "2009 suit"), alleging that the vacation policy violated the Illinois Wage Payment and Collection Act by barring participation for new employees who failed to meet a threshold number of hours on the job.[1]  (Complaint in *Romo v. Manpower, Inc.*, No. 09 C 3429 (N.D. Ill. June 5, 2009), Ex. 1 to Compl.)  The plaintiffs in *Romo* later amended their complaint to add KCP as a defendant.  (*Id.* ¶ 13.)  The 2009 plaintiffs alleged that Manpower and KCP afforded them paid vacation as a term of employment under the vacation pay policy, but that the policy violated the law by, among other things: (1) denying employees the right to have vacation time vest proportionally as they work; and (2) causing a forfeiture of vested vacation for employees whose employment terminates prior to the completion of a pre-designated number of hours.  (5th Am. Compl., *Romo v. Manpower, Inc.*, No. 09 C 3429 (N.D. Ill. March 24, 2010), Ex. 1 to Def.'s Am. Mem., ¶¶ 34-35.)  The fifth amended complaint in that earlier suit alleged that these provisions violated the IWPCA, which "provides that vacation time vests proportionately as labor is rendered; that upon termination of employment an employee is entitled to a pro rata share of vested vacation pay; and that accrued vacation is part of an employee's wages and thus cannot be forfeited."  (*Id.* ¶ 36 (citing 215 ILCS § 5/155).)

On May 25, 2010, KCP submitted the 2009 suit as a claim on its policy (discussed below) with its liability insurer, Defendant Federal Insurance Company.[2]  (Compl. ¶ 17.)  In two letters, Federal denied coverage, stating that "[a]s no negligent act, error, or omission is alleged

---

[1] Plaintiffs in the 2009 suit invoked jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  (5th Am. Compl. ¶ 20.)

[2] The record is silent on the question whether Manpower also sought coverage under the policy at issue here.

2

against the Insured, there is no coverage for this matter under this Policy." (*Id.*) KCP eventually settled the *Romo* litigation.[3] (Compl. ¶ 14.)

## II. The Insurance Policy

Federal sold Manpower a number of insurance policies, including the policy at issue in this dispute. (*Id.* ¶ 15.) The policy's coverage extended to KCP as an authorized franchisee of Manpower and established a duty to defend and indemnify Plaintiff against lawsuits brought by its employees for "employee benefits errors or omissions." (*Id.* ¶ 16.) The disputed policy—Number 3520-77-90—was in effect at all times relevant to the 2009 suit, and reads in pertinent part as follows:

> Coverage: Subject to the applicable Limits of Insurance, we will pay damages the insured becomes legally obligated to pay for any claims arising out of a negligent act, error or omission to which this insurance applies, by or on behalf of the insured in the administration of employee benefit programs. . . .
>
> Investigation, Defense and Payment of Damages: [Insurer] will have the right and duty to defend any insured against a suit seeking damages for any claim arising out of a negligent act, error, or omission.

(Insurance Policy, Ex. B to Compl., at 14, 15 (emphases omitted).) The policy further defines "Administration" as four different types of conduct: (1) "informing employees of the content of"; (2) "giving advice, other than legal advice, about"; (3) "handling of records in connection with"; or (4) "effecting[4] enrollment, termination or cancellation of employees under, employee benefit programs, provided such acts are authorized by [KCP]." (*Id.* at 23 (emphasis omitted).)

---

[3] Although Plaintiff seeks damages in excess of the $75,000 required for diversity jurisdiction, it does not identify the amount of the settlement it reached in the 2009 suit.

[4] To "effect" means "[t]o bring about; to make happen," BLACK'S LAW DICTIONARY (9th ed. 2009), or "to cause to come into being; to bring about." (WEBSTER'S THIRD NEW INT'L DICTIONARY (1993). Thus, this portion of the definition of "administration" refers to acts or omissions in causing or bringing about the enrollment, termination, or cancellation of employees in employees' benefits plans.

3

### III. This Litigation

KCP filed this insurance coverage suit against Federal on December 10, 2013. The complaint includes three counts. It alleges (1) a breach of the duty to defend; (2) a breach of the duty to indemnify; and (3) a vexatious and unreasonable delay in payment in violation of section 155 of the Illinois Insurance Code, 215 ILCS § 5/155. Plaintiff seeks defense costs and indemnity for beach of the insurance contract. (Compl. ¶ 43.) This court has jurisdiction over these state law claims based on the diversity of the parties (Plaintiff is an Illinois corporation and Defendant is a citizen of New Jersey). (*Id.* ¶¶ 20, 21.) Plaintiff seeks damages in excess of the $75,000 requirement. (*Id.* ¶¶ 34, 43, 49.)

### DISCUSSION[5]

Federal moved to dismiss pursuant to Rule 12(b)(6), arguing that the 2009 complaint did not assert a claim arising within the policy coverage. Specifically, Federal argues that the 2009 suit does not fall under the policy for two reasons: (1) "it did not allege an act, error or omission 'in the administration' of KCP's vacation plan"; and (2) "it did not allege a 'negligent' act, error or omission at all." (Def.'s Am. Mem. at 7.)

### I. Standard of Review

Under Rule 12(b)(6), a party may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In ruling on a motion to dismiss under 12(b)(6), the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in favor of the non-moving party (in this case, KCP). *EEOC v. United Airlines, Inc.*, 693 F.3d 760, 761–62 (7th Cir. 2012). The court does not ask whether KCP will ultimately prevail; rather, it asks whether it is entitled to offer

---

[5] Illinois law applies in this diversity suit because neither party has argued otherwise and both rely exclusively on Illinois law. *See Burdett v. Miller*, 957 F.2d 1375, 1382 (7th Cir. 1992).

evidence to support its claims against Federal. *Smith v. Cash Store Mgmt., Inc.,* 195 F.3d 325, 327 (7th Cir. 1999).

Plaintiff argues that "[t]he issues of whether [Defendant] is required to defend and indemnify [KCP] are not properly decided on a motion to dismiss" (Pl.'s Resp. at 4), but this is an overstatement. Breach of contract claims, such as those here, may, in fact, be dismissed under Rule 12(b)(6) where the claims unambiguously contradict the language of the contract in question. See *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1104 (7th Cir. 1997) ("If the contract is unambiguous, therefore, a breach of contract claim is susceptible to dismissal for failure to state a claim."); *Belsky v. Field Imps., Inc.*, No. 13 C 1758, 2013 WL 5819232, *11 n.14 (N.D. Ill. Oct. 29, 2013) (citing cases). In fact, courts in this district have previously dismissed duty to defend suits under Rule 12(b)(6) on similar grounds. *See e.g., Hawks v. American Escrow, LLC*, No. 09 C 2225, 2012 WL 966059 (N.D. Ill. March 16, 2012).

**II.    Count I: Duty to Defend**

Whether an insurer has a duty to defend depends on a comparison of the allegations of the underlying complaint to the relevant policy provisions. *Shriver Ins. Agency v. Utica Mut. Ins. Co.*, 323 Ill. App. 3d 243, 247, 750 N.E.2d 1253, 1256 (2d Dist. 2001) (citing *Country Mut. Ins. Co. v. Hagan*, 298 Ill. App. 3d 495, 500, 698 N.E.2d 271 (2d Dist. 1998)). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action." *Maxum Indem. Co. v. Gillette*, 405 Ill. App. 3d 881, 885, 940 N.E.2d 78, 82 (3rd Dist. 2010) (quoting *Crum & Forster Mgrs. Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391-94, 398, 620 N.E.2d 1073, 1077-79 (Ill. 1993). "Like any contract, an insurance policy is construed according to the plain and ordinary meaning of its unambiguous terms." *Auto-Owners Ins. Co. v. Munroe,* 614 F.3d 322, 324 (7th Cir. 2010) (citing *Nicor, Inc. v. Associated Elec. & Gas,* 223 Ill. 2d 407, 416-17, 860 N.E.2d 280, 286 (Ill. 2006)).

As discussed above, the disputed insurance policy covers "any claim arising out of a negligent act, error or omission . . . in the administration of employee benefit programs." (Insurance Policy at 14.) The policy defines "administration" as (1) "informing employees of the content of"; (2) "giving advice, other than legal advice, about"; (3) "handling of records in connection with"; or (4) "effecting enrollment, termination or cancellation of employees under, employee benefit programs, provided such acts are authorized by [KCP]." (*Id.* at 23.)

### A. "Administration" of the Vacation Pay Policy

Federal contends that the 2009 suit's allegations did not involve the "administration" of the vacation pay plan. Rather, Defendant argues, the underlying suit was, in fact, "an attack on the plan benefit terms themselves." (Def.'s Am. Mem. at 9.) Plaintiff, for its part, contends that "[KCP]'s conduct at issue in the 2009 Matter involved whether the company was required to enroll newer employees in the vacation policy, so that they received pay for unused vacation time. Therefore, the conduct at issue concerned administration." (Pl.'s Resp. at 10.) Thus, according to Plaintiff, the underlying suit involved the "administration" of the vacation pay plan only under the fourth and final section of the definition: i.e., only insofar as Plaintiff's conduct "effect[ed] enrollment, termination or cancellation" of employees in the plan.[6]

As Defendant points out, however, the 2009 suit did not have anything to do with enrollment; the plaintiffs in that case were "enrolled" in the vacation pay plan. Rather, the 2009 plaintiffs claimed that the *terms* of that plan, as applied to those employees who were enrolled, violated Illinois law:

---

[6] The parties devoted significant attention to other courts' interpretations of the word "administration." (*See* Def.'s Am. Mem. at 9; Pl.'s Resp. 10-13.) KCP points to case law that defines administration broadly, capturing all "discretionary decision-making activities." *See Stinker Stores, Inc. v. Nationwide Agribusiness Ins.*, Case No. CV-08-370 LMB, 2010 WL 1338380 (D. Idaho March 31, 2010). Federal, for its part, prefers a narrower interpretation, which would limit the scope of the term to "ministerial acts." *See Maryland Casualty Co. v. Economy Bookbinding Corp. Pension Plan & Trust*, 621 F.Supp. 410 (D.N.J. 1985). Under either definition, however, the allegations in the 2009 suit do not involve "administration" of the plan; they challenge the plan itself.

6

> Defendants have maintained a common Vacation Policy for their temporary employees. The vacation policy provides that employees shall only earn vacation pay if they achieve a certain minimum number of hours worked for Defendants. If Defendants' employees terminate prior to achieving the designated number of hours . . . the policy provides that any vacation pay earned under the policy is forfeited . . . As a result of Defendants' unlawful vacation policy, [plaintiffs] have been denied vested vacation pay. This violates the IWPCA which requires an employer to pay upon termination of employment an employee his or her pro rata share of vested vacation pay.

(5th Am. Compl. ¶¶ 22, 38.) The 2009 suit did not, under any reasonable interpretation, involve the "administration" of the vacation pay plan. Accordingly, that litigation was not covered by the parties' insurance policy, and Count I must be dismissed.

### B. Negligent Act, Error or Omission

As the underlying action did not involve claims related to the administration of the vacation pay plan, the court need not address whether the 2009 suit alleged "a negligent act, error or omission" by KCP. The court notes, however, that Federal has the better of this argument, as well; the underlying complaint does not accuse KCP of negligence, as required to trigger coverage under the policy.

As Federal points out, the 2009 allegations "did not allege a 'negligent act, error or omission.'" (Def.'s Reply at 7.) Rather, the alleged misconduct that formed the basis for that action was "a deliberate decision to set the terms under which employees receive payments for unused vacation time." (*Id.* at 8.) Defendant interpreted Federal's position as an argument that "it has no duty to defend because the underlying complaint did not use the word 'negligence.'" (Def.'s Resp. at 6.) KCP urges that "[t]he question of coverage should not hinge on the draftsmanship skills of the plaintiff in an underlying action" (Pl.'s Resp. at 6), and argues that "the exclusion of allegations of willful conduct means that only negligent conduct was at issue" (*Id.* at 10); therefore, "the matter fell within, or at least potentially within, coverage."[7] (*Id.* at 6.)

---

[7] Plaintiffs also hint that "the discovery, pleadings, and court approved settlement emphasize that the plaintiffs sought damages . . . for negligent conduct" (Pl.'s Resp. at 7); but KCP fails to elaborate or provide further information substantiating this assertion.

7

KCP is correct that coverage under a liability insurance policy does not turn on "the draftsmanship skills of the plaintiff in an underlying action." (*Id.* at 6 (citing *Pekin Ins. Co. v. Wilson*, 237 Ill.2d 446, 460, 930 N.E.2d 1011, 1019 (2010)).) That means, however, that the exclusion of the word "willful" is no more dispositive of the issue at hand than the failure of the 2009 plaintiffs to specifically allege "negligence." Instead, the court looks to the underlying facts to determine whether Federal had a duty to defend. The question, then, is whether the establishment of the vacation pay plan here was a "negligent act, error or omission" by KCP.

Defendant cites several cases for the proposition that intentional policy determinations, like the establishment of the vacation pay plan here, do not constitute negligent acts. (Def.'s Mem. at 10-11.) Although not binding on this court, the Ninth Circuit's brief opinion in *Group Voyagers*, an insurance coverage case involving essentially the same policy[8], is most instructive. *Group Voyagers, Inc. v. Emplrs. of Wausau*, 66 Fed. App'x 740 (9th Cir. 2003). The underlying claims in that suit alleged that Group Voyagers, Inc. had adopted a policy of granting pension benefits to one group of employees and not to another in violation of California law. As here, the underlying plaintiffs in *Group Voyagers* did not allege that the employer had acted negligently in applying its retirement plan, but instead claimed that the employer had faithfully applied a plan that was itself in violation of state law. Finding that the underlying suit did not allege a negligent act but a "purposeful" and "deliberate" decision regarding which employees received benefits, the Ninth Circuit affirmed the lower court's grant of summary judgment in favor of the insurer. The *Group Voyagers* court added that even if the underlying suit were construed as an allegation that the plan had been negligently *drafted*, such a suit still would not have been covered by the disputed insurance policy, because that claim would not have dealt with the "administration" of the benefits plan. *Id.* KCP objects to Defendant's reliance on *Group*

---

[8] Like the insurance contract here, the policy in *Group Voyagers* required the insurer to defend suits for losses "as a result of a negligent act, error, or omission that occurs in the 'administration' of [the insured's] 'employee benefits program.'" *Group Voyagers*, 66 Fed. App'x at 741.

8

*Voyagers* because that case was decided on a motion for summary judgment. This distinction is inconsequential, however, with regards to whether or not the acts alleged here constitute negligence as a matter of law. They do not. Just as in *Great Voyagers*, the underlying plaintiffs here alleged that the terms of KCP's employee benefits plan violated state law. The allegation that Plaintiff adopted an illegal vacation pay plan is not a claim that KCP committed a "negligent act" in the plan's "administration."

### C. Exclusions to Coverage

Finally, Plaintiff argues that the insurance policy here must cover the conduct alleged in the underlying suit, because that conduct was not specifically listed among the policy's various exclusions from coverage. (Pl.'s Resp. at 13-14 (citing Insurance Policy, Ex. B to Compl., at 16-17).) To support this notion, Plaintiff refers to the canon of construction *expressio unius est exclusio alterius*. As KCP would have it, the "express mention of one thing in a contract implies the exclusion of all not expressed." (*Id.* at 13.) In other words, because the exclusions section does not refer to the conduct alleged in the 2009 suit, that conduct should be covered by the insurance policy.

In this court's view, the interpretative principle Plaintiff cites does not control the case. A list of exclusions, such as the one in the insurance policy here,[9] is only instructive in the context of what is covered by the policy's other terms. If the only conduct excluded from coverage were those acts enumerated in the exclusions section, the remainder of the policy would be meaningless. Having already concluded that the conduct alleged in the 2009 suit does not fall under the terms of the policy (discussed above), the court need not address the exclusion section.

### III. Counts II & III: Duty to Indemnify and Section 155 of the Illinois Insurance Code

---

[9] The policy here explicitly excludes, for instance, "dishonest acts" such as criminal or fraudulent acts, errors or omissions; penalties, fines, or punitive damages; or unlawful discrimination. (Insurance Policy at 16-17.)

As there is no duty to defend (discussed above), Counts II and III must also be dismissed. "The insurer's duty to defend is much broader than its duty to indemnify," therefore, "where there is no duty to defend, there will be no duty to indemnify." *Crum & Forster Mgrs. Corp.,* 156 Ill. 2d at 393-94, 398, 620 N.E.2d at 1079, 1081; *Steadfast Ins. Co. v. Caremark Rx, Inc.,* 359 Ill. App 3d 749, 762, 835 N.E.2d 890, 901 (1st Dist. 2005) ("no duty to indemnify can exist in the absence of a duty to defend").

The dismissal of the duty to defend claim similarly sinks Plaintiff's section 155 claim. Section 155 of the Illinois Insurance Code provides a remedy for an insured who encounters unnecessary difficulties when an insurer withholds policy benefits. 215 ILCS § 5/155; *Bedoya v. Illinois Founders Insurance Co.,* 293 Ill. App. 3d 668, 679, 688 N.E.2d 757, 764 (1st Dist. 1997). A defendant cannot be liable for section 155 relief, however, where no benefits were owed. *O'Rourke v. Access Health, Inc.,* 282 Ill. App. 3d 394, 406, 668 N.E.2d 214, 222 (1st Dist. 1996) (citing *Weeks v. Aetna Insurance Co.,* 150 Ill. App. 3d 90, 93, 501 N.E.2d 349, 350 (2d Dist. 1986)).

As Federal had no duty to defend KCP in the underlying action, it had no duty to indemnify, nor may it be found liable under section 155. Counts II and III are dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss for Plaintiff's failure to state a claim pursuant to Rule 12(b)(6) is granted.

ENTER:

Dated: June 11, 2014

REBECCA R. PALLMEYER
United States District Judge